## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DWIGHT LOUERS, et al.** | * | |
| | * | |
| **v.** | * | **Civil No. JKS-10-2292** |
| | * | |
| **SHANITA R. LACY, et al.** | * | |
| | * | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Dwight and Faith Louers (the Louers) filed this action against Shanita R. Lacy, Clarence Lacy, Clean Slate Financial Services, LLC, Transcontinental Title Company, First American Title Insurance Company, Challenge Financial Investors Corporation, and James Arnold Bennett (collectively, Defendants).  Currently pending is the Louers' motion for leave to amend their complaint to add a class action claim, (ECF No. 86), and First American's motion to strike portions of the Louers' reply memorandum (ECF No. 91).  No hearing is deemed necessary.  *See* Local Rule 105.6.  For the reasons set forth below, both motions will be denied.

### I. <u>Background.</u>

The Louers are former owners of real property located at 7505 Marion Street, District Heights, Maryland.  In 2007, they fell behind on their mortgage payments, and were put into contact with Defendants Shanita and Clarence Lacy and Clean Slate.  The Louers allege that the Lacys and Clean Slate fraudulently represented to them that they could avoid foreclosure by assigning an investor, Defendant James Arnold Bennett, to whom their property would be sold for a period of one year, and that during that year they could remain in their home while the mortgage, rent, and taxes were paid, after which their credit would be sufficiently repaired to allow them to repurchase their home.  The Louers allege that they were ultimately deprived of the title to and significant equity in their property, in the amount of approximately $200,000.  The Louers further allege that the scheme was facilitated by the knowing cooperation of First

American's predecessor Transcontinental, which acted as settlement agent for the Louers' transaction with Bennett.

In support of the current motion, the Louers proffer two pieces of new evidence. First, the Louers allege that they have discovered evidence of at least twenty-nine (29) Clean Slate/Shanita Lacy foreclosure rescue transactions in which Transcontinental provided settlement services, eleven of which were conducted within three years of the filing of the Louers' original complaint.  (ECF No. 86 at 5).  Second, the Louers cite the recent deposition testimony of Transcontinental manager Mai Tani Waye, in which Ms. Waye allegedly admitted that Transcontinental had knowledge that Clean Slate/Shanita Lacy provided foreclosure rescue services for individuals in financial distress, as well as knowledge that Clean Slate/Shanita Lacy were involved in the transactions.  (ECF No. 86 at 4-5).  The Louers contend that the discovery of this new evidence justifies granting their motion for leave to amend.

## II.  <u>Standard of Review.</u>

Federal Rule of Civil Procedure 15 provides that after the period to amend a complaint as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  A party's motion to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *Jefferson v. Sch. Bd. of the City of Norfolk*, 2011 U.S. App. LEXIS 21685, at *6 (4th Cir. 2011) (quoting *Laber v. Harvey*, 438 F.3d 404, 426–27 (4th Cir. 2006) (en banc)).

However, when a party seeks to amend a complaint after the deadline set forth in the scheduling order, there is an additional prerequisite: the moving party "must *first* meet the mandates of Rule 16(b)(4), which, calls for 'good cause' to change a scheduling order."  *Sall v.*

*Bounassissi*, 2011 U.S. Dist. LEXIS 75363, at *8 (D. Md. 2011) (emphasis in original); *see also*

*Nourison Rug Corp v. Parvizian*, 553 F.3d 295, 298 (4th Cir. 2008).  Only after the moving party

satisfies Rule 16(b) will the court evaluate prejudice, bad faith, and futility under Rule 15(a).

*See Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373 (D. Md. 2002).

    **III.  <u>Discussion.</u>**

    As a preliminary matter, the motion to amend will be denied on fundamental due process

grounds.  The proposed amended complaint names five defendants, ¶¶ 11, 12, 13, 16 and 17,

who the Louers acknowledge "have not been served with copies of pleadings or other materials

filed by the parties," (ECF No. 68 at 12 n.5), and who are not listed on the certificate of service

filed with this motion.  In addition, these five defendants lack counsel and have interests likely to

be adverse to those of the represented defendants.  The fundamental right of these defendants to

receive notice and an opportunity to be heard regarding the proposed amendment clearly

precludes the court from granting the motion.

    This motion would, however, be denied even absent its due process problems.  Under

Federal Rule of Civil Procedure 15(a)(2), leave to amend a complaint should not be denied

absent prejudice, bad faith, or futility.  *Nathaniel Bank v. Pearson,* 863 F.2d 322, 327 (4th Cir.

1988); *Johnson v. Orowest Foods Co.,* 785 F.2d 503, 509 (4th Cir. 1986).  Leave to amend this

complaint will be denied because, as previously noted, justice would prohibit it, and also on the

alternative grounds of prejudice and futility. [1]

---

[1]  First American claims that the motion is untimely under the scheduling order, and lacks good cause under Federal Rule of Civil Procedure 16(b)(4).  (ECF No. 89 at 4-7).  This assertion led to a new round of arguments:  plaintiffs replied to the allegation that they had failed to show good cause and First American then moved to strike the reply, arguing that plaintiffs were required to address this issue in their original motion for leave to amend and instead make an improperly belated attempt to address the issue in their Reply.

    Ordinarily, "arguments raised for the first time in a reply brief or memorandum will not be considered."  *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F. Supp. 2d 527, 535 (D. Md. 2010); *see SEC v. Pirate Investor LLC*, 580 F.3d 233, 255 n.23 (4th Cir. 2009); *see also United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2003) ("It is a well-settled rule that contentions not raised in the argument section of the opening brief are abandoned.").  However, "the power to decline consideration of such arguments is discretionary, and courts are not precluded from considering such issues in appropriate circumstances."  *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d. 731, 734 (D. Md. 2006).  One such "appropriate circumstance" includes situations where the

**1. Prejudice.**

The Louers claim that First American was put on notice of the potential claims of other victims in Paragraph 10 of the original complaint,[2] and that the putative class members are the other individuals alluded to in the original complaint. (ECF No. 86 at 7–8.) They also contend that First American will not suffer any prejudice because the new claims "arise out of the same set of operative facts and improper conduct that gave rise to [their] initial filing."

First American, in contrast, contends that the proposed new plaintiffs have unique transactions, operative facts, and applicable law. First American also contends that because the Louers "have not once indicated or argued that they were attempting to establish a class action claim or add additional plaintiffs from other transactions," even when the issue was previously before the court,[3] First American tailored its defense strategy to focus solely on the Louers' transaction.[4]

---

moving party raises an issue for the first time in a reply brief because the opposing party has addressed particular counterarguments in its motion for opposition. *Id.* (citing *United States v. Head*, 340 F.3d 628, 630 n.4 (8th Cir. 2003)). Moreover, because surreply memoranda are usually not permitted, *see* Local Rule 105.2(a), the paramount consideration is whether the opposing party would be prejudiced by a lack of opportunity to respond to the new arguments made in the moving party's reply. *Id.* at 735. Here, where the motion for leave to amend clearly lacks substantive merit, the court will assume without deciding that the motion is proper under Rule 16 and deny the motion to strike as moot.

[2] Paragraph 10 of the Louers' complaint reads as follows:
> 10. This case arises out of a foreclosure rescue scam designed by Defendants, Shanita R. Lacy, Clarence Lacy, James Bennett and Clean Slate, which they labeled "Foreclosure and Credit Repair Program." The *scam was carried out through the cooperation and use of the other named Defendants to this action, and was intended to take advantage of individuals who were in, or at risk of, foreclosure or were having difficulty making their monthly mortgage payments.* The goal of Defendants' common scheme was to unlawfully and through purposeful misrepresentation and false promises, *induce victims into transferring title to their properties so that they could take possession of, and use for their unlawful gain, the significant equity found within such properties.* All of the Defendants were improperly, unfairly and illegally enriched by their knowing participation in a common enterprise which *illegally took advantage of homeowners including Plaintiffs, Dwight and Faith Louers, who were in, or at risk of, foreclosure.*

ECF No. 2 at 4, ¶ 10 (emphasis by Plaintiffs).

[3] First American quotes from a previous filing by Plaintiffs:
> *Rather than engaging in a* [sic] *exercise to "track down additional plaintiffs for additional cases," as Defendant has claimed*, each subpoena was specifically directed to individuals and accounts known to be involved in the Clean Slate/Shanita Lacy foreclosure rescue scheme, and are intended to uncover the source and disposition of funds used to carry out such scheme. Such evidence is critical in establishing the relationships between the parties and Transcontinental's knowing participation in the conspiracy alleged.

(ECF No. 68-1 at 19–20) (emphasis added by Defendants).

When analyzing whether an amendment is prejudicial, the court looks to "the nature of the proposed amendment, the purpose of the amendment, and the time that the amendment was filed." *Equal Rights Ctr. v. Archstone Smith Trust*, 603 F. Supp. 2d 814, 818 (D. Md. 2009). This court "disfavor[s] belated claims that change the character of litigation." *Id.* (citing *Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987)). For example, an amendment is prejudicial when it "raises a new legal theory shortly before trial that requires the defendant to gather and consider new facts." *Wood v. Walton*, 2011 U.S. Dist. LEXIS 86250, at *20–21 (D. Md. 2011). Further, a motion to amend "may prejudice the non-moving party when the motion would shift the theory of the case, thereby rendering the non-moving party's discovery a misdirected use of resources and compelling the non-moving party to engage in costly additional discovery." *Sharkey IRO/IRA v. Franklin Res.*, 263 F.R.D. 298, 301 (D. Md. 2009) (citing *Deasy*, 833 F.2d at 41–42). However, if an amendment "simply adds an additional theory of recovery based on the same set of alleged facts offered before discovery" began, the amendment is not prejudicial. *Equal Rights Ctr.*, 603 F. Supp. 2d at 818.

Here, adding a class action claim would drastically change the character of the litigation at a time when it faces a rapidly approaching discovery deadline, which this court has already extended three times.[5] (ECF Nos. 52, 64, and 88). This proposed amendment does not simply add an additional theory of recovery. It adds ten new and potentially unique financial transactions to what was formerly a one transaction case. There is no showing that the underlying facts relating to either liability or damages are common to all, or even a majority of, the proposed class members. (*See* ECF No. 86 Ex. 1 ¶ 19). In order to adequately prepare a class action defense, First American would be forced to reopen the ten depositions that have already been taken, and be forced to take a number of additional depositions based on ten new

---

[4] For example, First American declined to ask questions of deposition witnesses who were unrelated to the Louers' transaction, and would have done so had First American known that the Louers intended to bring a class action suit. (ECF No. 89 at 9–10).

[5] The original discovery deadline was May 20, 2011. (ECF No. 36).

individuals and transactions.  Fifteen months of discovery would have to be almost completely

redone, with less than two months remaining before the discovery deadline.  The severe

prejudice this would cause to First American warrants denial of leave to amend.

**2.  Futility.**

This motion for leave to amend fails on the alternative ground of futility.  A futile

amendment is one that cannot survive a motion to dismiss under Rule 12(b)(6).  *Stewart v.*

*Bierman*, 2011 U.S. Dist. LEXIS 94993, at *7 (D. Md. 2011) (citing *Perkins v. United States*, 55

F.3d 910, 917 (4th Cir. 1995)).  A district court should deny leave to amend on futility grounds

"only when the proposed amendment is clearly insufficient or frivolous on its face."  *Id.*  In

addition, "leave to amend should be denied if the well-pleaded facts underlying the proposed

new claims do not amount to a showing that the plaintiff is entitled to relief."  *Sall*, 2011 U.S.

Dist. LEXIS 73363, at *13 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007)).

Because the Louers are attempting to add a class action claim, the court looks to the

provisions of Federal Rule of Civil Procedure 23 to determine whether the claim would survive a

motion to dismiss.  The complaint must satisfy Rule 23(a) and at least one subdivision of Rule

23(b).  Rule 23(a) itself has four enumerated prerequisites: (1) numerosity of parties; (2)

commonality of factual and legal issues; (3) typicality of claims and defenses of class

representatives; and (4) adequacy of representation.  FED. R. CIV. P. 23(a); *see Gray v. Hearst*

*Communs., Inc.*, 2011 U.S. App. LEXIS 17890, at *3–4 (4th Cir. 2011).

**Numerosity.**

Numerosity requires a showing that the putative class is "so numerous that joinder of all

members is impracticable."  FED. R. CIV. P. 23(a)(1).  While no specified number is needed to

establish impracticability, courts often "find classes of at least 40 members sufficiently large to

satisfy the impracticability requirement."  *Peoples v. Wendover Funding*, 179 F.R.D. 492, 497

(D. Md. 1998) (citing NEWBERG ET AL., CLASS ACTIONS § 3.05, at 3–25); s*ee also Minter v.*

*Wells Fargo Bank, N.A.*, 22 F.R.D. 525, 532 (D. Md. 2011).  The court should consider the size of the class, the ease of identifying its members, the facility of making service on them if joined, and their geographic dispersion.  *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 215 (D. Md. 1997); *see also Kuei-I Wu v. Mamsi Life & Health Ins. Co.*, 269 F.R.D. 554, 559 (D. Md. 2010).  The court should also consider whether "individual claims are so small as to inhibit an individual from pursuing his own claim."  *Hewlett*, 185 F.R.D. at 215.  However, despite guidance from such factors, the numerosity determination "rests on the court's practical judgment in light of the particular facts of the case."  *Id.*

This proposed class includes eleven identified property owners whose closings occurred in either Maryland or Virginia.  (¶¶ 23, 76).  Although they bear the burden of showing impracticability, *see, e.g.,* WRIGHT AND MILLER CIVIL 3D § 1762, and cases discussed therein, the Louers do not even argue that joinder is impracticable, that there is wide geographic dispersion or that the individual claims are so small as to inhibit individual litigation.  Indeed, their own individual complaint seeks $1,000,000 in compensatory damages.   (ECF No. 47 at 24).  They have failed to show that the class is so numerous that joinder is impracticable. [6]

**Commonality and Typicality.**

Commonality requires a showing that there are "questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  A moving party must "demonstrate that the class members have suffered the same injury, and that the claim depends upon a common contention that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an

---

[6] First American contends that the addition of Virginia-based plaintiffs would result in the destruction of diversity.  (ECF No. 89 at 12–13).  This argument improperly states the law regarding diversity jurisdiction in class action cases.  Where plaintiffs invoke jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), "only the citizenship of the named representatives of the class is considered, without regard to whether the citizenship of other members of the class would destroy complete diversity or to the class members' particular stake in the controversy."  *Bernal v. Comerica*, 2010 U.S. Dist. LEXIS 88688, at *5– 6 (D. Md. 2010) (quoting *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990)); *see also Zimmerman v. Bell*, 101 F.R.D. 329, 332 (D. Md. 1984) ("[I]n a true class action, diversity jurisdiction is not destroyed—where the original named parties representing the class are citizens of different states than their opponents—by the intervention of other members of the class whose residency destroys complete diversity.").  In essence, only minimal diversity between the named parties is required.

issue that is central to the validity of each one of the claims in one stroke." *Gray*, 2011 U.S.

App. LEXIS 17890, at *4–5 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551

(2011)).  The moving party will not satisfy the commonality requirement "if the court must

investigate each plaintiff's individual claim." *Kuei-I Wu*, 269 F.R.D. at 559.  Essentially, "the

common questions must be dispositive and overshadow other issues." *Id.*

Typicality examines "whether a sufficient relationship exists between the injury to the

named plaintiff and the conduct affecting the class, so that the court may properly attribute a

collective nature to the challenged conduct." *Talley v. ARINC, Inc.*, 222 F.R.D. 260, 268 (D.

Md. 2004).  It is possible for a plaintiff's claim to "differ factually and still be typical of the

claims of class members if it arises from the same event or practice or course of conduct that

gives rise to the claims of other class members, and if his or her claims are based on the same

legal theory." *Bullock v. Bd. of Educ.*, 210 F.R.D. 556, 560 (D. Md. 2002).  However, "where a

purported class representative is subject to a unique defense that cannot be asserted against other

members of the class (other than minor discrepancies), typicality may be lacking." *Kuei-I Wu*,

269 F.R.D. at 563.  "[T]he need for a case-by-case determination of a material issue for each

class member's claim" can not only defeat commonality, but typicality and adequacy of

representation as well.  *Id.* at 560; *see also Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir.

2009) ("[T]he final three requirements of Rule 23(a) tend to merge.").

The Louers contend that their proposed amended complaint "describes in detail how each

Rule 23 requirement is met," (ECF No. 86 at 10), but they do not reference anything specific.  In

their reply memorandum, they contend that all class members were victims of a single fraudulent

scheme in which Transcontinental's role was to conduct the closing, which involved accepting

closing funds from Clean Slate and generating closing documents which falsely represented that

the transactions were arm's length and hid Clean Slate's involvement.  (ECF No. 90 at 9).

The only common facts here are thus the alleged overall fraud, the bulk of which, even under the Louers' theory, was committed by absent defendants,[7] and the fact that Transcontinental was the settlement agent in each closing.  While commonality and typicality do not require that each class member have an identical factual and legal claim in all respects, *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 344 (4th Cir. 1998), they do require more than the involvement of the same defendant in each of several distinct transactions.  Here, the issues likely to be unique to each class member include not only the degree of Transcontinental's knowledge of, and involvement in, fraudulent activity, but also whether the alleged victims reasonably relied on any such false or fraudulent acts, *see, e.g.,* ECF No. 61, as well as significant damages disparities.[8]

In *Kuei-I Wu*, the plaintiff alleged that she had satisfied the commonality prong based on a coordination of benefits conspiracy between her automobile insurer and her direct health care provider.  This court decertified the class (originally certified in the State Court) because it would have been forced to investigate individualized issues unique to each plaintiff's claim, including: (1) whether each plaintiff fell within the class definition; (2) whether a coordination of benefits conspiracy actually existed; (3) whether the defendants could be held liable for the alleged conspiracy; and (4) whether each plaintiff sustained damages, and if so, in what amount. *Id.* at 556, 560.  This proposed class action suffers similar deficiencies.

In light of the proposed complaint's failure under due process and alternative provisions of Rules 15 and 23(a), it is unnecessary to address the relation back and Rule 23(b) arguments presented in these papers.  However, the court notes that this proposed class action involves

---

[7] The Louers have acknowledged that all other defendants are "essentially in default and have not participated in this action nor have they been served with copies of pleadings or other materials filed by any party."  (ECF No. 68 at 12 n.5).

[8]   The Louers contend that this case is almost identical to *Proctor v. Metropolitan Money Store Corp.*, in which this court certified a class in a mortgage foreclosure rescue scheme against defendants that included two title companies.  RWT 07-cv-1957 (ECF No. 190 at 2) (granting Plaintiffs' Amended Motion to Certify Class).  However, the only apparent similarity is that the settlement agents were defendants in both cases.

state-law claims arising in two different states, and could thus require that different substantive

state law be applied to individual claims.

**IV.  <u>Conclusion.</u>**

For the foregoing reasons, Motion for Leave to Amend and the Motion to Strike are

denied.

Date:  December 8, 2011                                                        /S/_____

                                                        JILLYN K. SCHULZE
                                                        United States Magistrate Judge