# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DWIGHT LOUERS, et al. | * |
| | * |
| v. | *   Civil No. JKS-10-2292 |
| | * |
| SHANITA R. LACY, et al. | * |
| | * |

## **MEMORANDUM OPINION**

Presently pending and ready for resolution is Plaintiffs' Petition for Default Judgment Damages. ECF No. 182. The petition seeks damages against three remaining Defendants: Shanita Lacy, Clarence Lacy and Challenge Financial Investors Corporation (Challenge Financial). No hearing is necessary. For the reasons outlined below, the motion will be granted in part and denied in part.

**I.     Background.**

On July 27, 2010, Plaintiffs, Dwight Louers and Faith Louers, filed a complaint in the Circuit Court for Prince George's County against Shanita Lacy, Clarence Lacy, Challenge Financial and several other Defendants, alleging that Defendants participated in a foreclosure rescue scam that, among other things, stripped Plaintiffs of the equity in their home. ECF No. 1; ECF No. 47 at 2. The case was removed to this court on August 20, 2010. ECF No. 1. Shanita and Clarence Lacy were served on August 17, 2010 and Challenge Financial was served on August 19, 2010 and again on August 22, 2010. ECF Nos. 10, 11, 16, 17. After they failed to respond to the complaint in any manner, the Clerk of the Court entered default against the Lacys and Challenge Financial,[1] ECF No. 162, and on October 2, 2013, the court entered a default judgment against them. ECF No. 181.

---

[1] The copy of the Order of Default sent to Challenge Financial was returned to the Clerk of the Court as undeliverable on April 18, 2013 and April 29, 2013. ECF Nos. 170 and 173.

The amended complaint alleges that Shanita and Clarence Lacy created a scheme that induced individuals facing foreclosure to transfer title to their homes to the Lacy "Clean Slate" credit repair program. ECF No. 47 at 2-3. This program, as advertised by the Lacys, would allow Plaintiffs to stay in their home, avoid foreclosure, repair their credit, and re-purchase their home in one year. *Id.* at 2-4. In actuality, the Lacys created the program to acquire the equity held in the homes of their clients.

Plaintiffs also allege that Defendant, Challenge Financial, brokered a $255,200 loan between Defendant, James Bennett,[2] and the lender, Option One Mortgage Corporation (Option One). Plaintiffs claim that, while brokering the loan, Challenge Financial knowingly provided Option One with false or misleading information including: that the matter involved an arm's length transaction; that Bennett was the real purchaser in interest; and that Bennett purchased the property with his own money. ECF No. 47 at 9. Plaintiffs contend that Challenge Financial turned a blind eye to the transfer of this false information to ensure that Defendants' scheme could proceed. *Id.*

As a result of Defendants' representations, the Louers (1) transferred title of their home to Bennett; (2) executed a contract of sale to Bennett for $319,000; and (3) transferred $130,000 of the $160,110.98 in net proceeds of the sale to the Lacy Clean Slate program as an enrollment fee. ECF No. 47 at 5.

## II. Standard of Review.

Upon entry of default judgment, the well-pleaded factual allegations of the complaint regarding liability are deemed admitted, in contrast to the allegations regarding damages. *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005); Fed. R. Civ. P. 8(b)(6) (a defaulting party is

---

[2] James Bennett was the official buyer of the Louers' property, as listed on the HUD-1 Settlement Statement. He purchased the title from the Louers for $319,000. ECF No. 47 at 7-8.

deemed to admit factual allegations of the plaintiff's complaint "other than [those] relating to the amount of damages"). The party in default is "not held . . . to admit conclusions of law" or allegations regarding liability that are not "well-pleaded." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quotation marks and citation omitted). Thus, before awarding damages, the court must consider whether the admitted facts constitute a legitimate cause of action. *Haley v. Corcoran*, Civ. No. WDQ 09-1338, 2010 U.S. Dist. LEXIS 112171, at *10 (D. Md. Oct. 20, 2010). As to damages, "[w]here the amount . . . is uncertain, the court is required to make an independent determination of the sum to be awarded." *J&J Sports Prods. v. Melgar*, Civ. No. PJM 11-3339, 2012 U.S. Dist. LEXIS 69391, at *5 (D. Md. May 15, 2012) (citations and quotation marks omitted). "While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on detailed affidavits or documentary evidence to determine the appropriate sum." *Id.*

**III. Discussion.**

Plaintiffs seek damages under the Maryland Protection of Homeowners and Foreclosure Act (PHIFA), MD. CODE ANN., REAL PROP. (RP) §§ 7-301 *et seq.*, and under theories of fraud, unjust enrichment, negligence and breach of contract. ECF No. 182 at 2-5. Their claims for damages all stem from the same foreclosure rescue scam, and thus, the damages claimed are related and, in some instances, duplicative. As discussed more fully below, a party may not recover twice for the same injury, *Kramer v. Emche*, 64 Md. App. 27, 40 (1985), and the court will limit the damages accordingly.

**A. PHIFA.**

PHIFA applies to foreclosure consultants, foreclosure consulting services and foreclosure purchasers. RP §§ 7-301(c), (e) and (h). A "foreclosure consultant" is a person who "solicits or

3

contacts a homeowner . . . and directly or indirectly makes a representation or offer to perform any service that the person represents will," *inter alia*, "stop . . . or postpone a foreclosure sale," "save the homeowner's residence from foreclosure," or "arrange for the homeowner to become a lessee or renter entitled to continue to reside in the homeowner's residence after a sale or transfer." RP §§ 7-301(c)(1)(i), (viii) and (x). The Lacys acted as foreclosure consultants by providing services to stop or postpone the imminent foreclosure of the Louers' home and to help repair their credit. ECF No. 47 at 2-4. The Lacys were contractually obligated to perform the services that they offered to the Louers, yet failed to do so, and thus engaged in conduct prohibited by PHIFA. *See* RP § 7-307 ("A foreclosure consultant may not: (1) Engage in . . . or carry out a foreclosure rescue transaction; (2) Claim . . . or receive any compensation until after the foreclosure consultant has fully performed each and every service the foreclosure consultant contracted to perform . . . ; . . . (8) Acquire any interest, directly or indirectly . . . in a residence in default from a homeowner with whom the foreclosure consultant has contracted."). Because a homeowner may bring a private action for damages against anyone who violates PHIFA, *see* RP § 7-320, the Louers are entitled to receive damages from the Lacys.

A PHIFA damage award may consist of actual damages, reasonable attorney's fees, and, if the court finds that the defendants violated the statute willfully or knowingly, treble damages. RP § 7-320. Plaintiffs seek actual damages equal to the amount of equity lost in their home as a result of Defendants' scheme. To support this request, they submit a HUD-1 settlement statement and an appraisal conducted by Mr. Jerome Bell, both executed on the day of closing. The appraisal valued the property at $336,000 at closing, ECF No. 182 at 22, and according to the HUD-1 settlement statement, Plaintiffs owed $135,628.54 in mortgage liens on the property. *Id.* This left an equity value of $200,371.46. However, Plaintiffs netted only $30,110.98 from

the proceeds of the sale after transferring $130,000 of the gross payment of $160,110.98 to the Clean Slate program. Thus, $30,110.98 must be subtracted from Plaintiffs' actual damage award, leaving the Lacys jointly and severally liable to Plaintiffs for actual damages in the amount of $170,260.48.[3] Moreover, because the Lacys operated their scheme willfully and knowingly, Plaintiffs are entitled to treble damages. Thus, the court will increase the compensatory damage award to $510,781.44.

Plaintiffs claim that Challenge Financial is liable as well because it brokered a loan between Option One, a mortgage lender, and Bennett, the purchaser of the Property. Plaintiffs allege that Challenge Financial should have informed Option One that: (1) the deal did not involve an arm's length transaction; (2) Bennett was not the true purchaser of the property; and (3) Bennett did not pay a $1,000 earnest money deposit or bring $64,263.56 to the closing. ECF No. 47 at 9. Plaintiffs, however, make no attempt to show how Challenge Financial should have known these facts or how Challenge Financial qualifies as a foreclosure consultant under PHIFA. PHIFA seeks to prevent foreclosure consultants from inducing homeowners to enter into unlawful foreclosure consulting contracts. *Massey v. Lewis*, Civ. No. AMD 08-261, 2009 U.S. Dist. LEXIS 129908, at *8 (D. Md. Feb. 24, 2009) (citing RP § 7-307). Here, there is no evidence that Challenge Financial induced the Louers to do anything. Plaintiffs cannot recover damages from Challenge Financial under PHIFA.

**B. Fraud.**

In order to establish fraud in Maryland, a plaintiff must show: "(1) that the one perpetrating the fraud made a false representation to the victim; (2) that its falsity was either known to the perpetrator or that the representation was made with reckless indifference as to its

---

[3] Plaintiffs calculate their actual damage award to be $170,371.46, but this number is inaccurate because it approximates Plaintiffs' net gain from the sale to be $30,000, instead of the actual number of $30,110.98.

truth; (3) that the misrepresentation was made for the purpose of defrauding the victim; (4) that the victim relied on the misrepresentation and had the right to rely on it; and (5) that the victim suffered compensable injury resulting from the misrepresentation." *Thomas v. Nadel*, 427 Md. 441, 451 n.18 (2012) (citation omitted). Plaintiffs allege that the Lacys made several false representations, most importantly, (1) that the Louers were only temporarily transferring title to their home to the Clean Slate Program for the purpose of repairing their credit and reacquiring their home after one year; (2) that the Lacys performed foreclosure consulting services valued at $130,000; and (3) that Bennett provided an earnest money deposit to the Louers in the amount of $1,000. ECF No. 47 at 13. Plaintiffs also allege that, given their financial situation and lack of sophistication with regard to real estate matters, they reasonably relied on the Lacys' representations. Based on these allegations, Plaintiffs have adequately pleaded a fraud claim and are entitled to damages paid by the Lacys.

Plaintiffs seek compensatory damages, emotional distress damages and punitive damages under their fraud claim. As discussed earlier, Plaintiffs cannot receive compensatory damages because the court has already awarded these damages under the PHIFA count. *See Haley*, 2010 U.S. Dist. LEXIS 112171, at *25 (A request for further compensatory damages is without merit because, under the "'one wrong, one recovery rule,' a party may not recover twice for one injury, even if the party asserts multiple, consistent theories of recovery."). However, in a fraud case, a plaintiff may recover "damages for emotional distress if there was at least a 'consequential' physical injury," in the sense that "the injury for which recovery is sought is capable of objective determination." *Wiseman v. First Mariner Bank*, Civ. No. ELH 12-2423, 2013 U.S. Dist. LEXIS 136229, at *68 (D. Md. Sept. 23, 2013) (citations and quotation marks omitted). "This 'physical' injury standard permits recovery for 'such things as depression, inability to work or

6

perform routine household chores, loss of appetite, insomnia, nightmares, loss of weight, extreme nervousness and irritability, withdrawal from socialization, fainting, chest pains, headaches, and upset stomachs,' but excludes recovery 'based on the plaintiff simply saying, 'This made me feel bad; this upset me.'" *Id.* (quoting *Hoffman v. Stamper*, 385 Md. 1, 33-35 (2005)).

Three principles govern the determination of whether a physical injury is capable of objective determination:

> First . . . the evidence must contain more than mere conclusory statements, such as "He was afraid," . . . . The evidence must be detailed enough to give the jury a basis upon which to quantify the injury. Second, a claim of emotional injury is less likely to succeed if the victim is the sole source of all evidence of emotional injury . . . There is no reason why the victim's own testimony may not be sufficient, as long as it otherwise provides the jury with enough information to render his or her injuries capable of objective determination. Third, although minor emotional injuries may be less likely to produce the kind of evidence that renders an injury capable of objective determination, that does not mean that an emotional injury must reach a certain threshold level of severity before it becomes compensable. . . . Our focus thus is properly on the evidence of mental anguish produced.

*Exxon Mobil Corp. v. Albright*, 433 Md. 303, 358-59 (2013) (citation omitted). "In the context of physical injuries arising from stress related to mortgage fraud, the Maryland Court of Appeals has indicated that a plaintiff's testimony that 'whenever he began thinking about his problems, he would get headaches and would vomit' could be sufficient to show an objectively ascertainable consequential physical injury from the fraud." *Fields v. Walpole*, Civ. No. DKC 11-1000, 2013 U.S. Dist. LEXIS 70493, at *11 (D. Md. May 16, 2013) (quoting *Hoffman*, 385 Md. at 33-38).

Here, Faith Louers testified that, after realizing that the Clean Slate Program was not legitimate, she cried often and suffered from anxiety, depression, sleepless nights and lack of focus at work. ECF No. 182 at 16, 18. She also felt stressed knowing that her son would be

7

forced to switch high schools as a result of their move. *Id.* Dwight Louers testified that he suffered from headaches, sleeplessness, stress, alcohol abuse and missed time from work. ECF No. 182 at 13.

In *Fields*, 2013 U.S. Dist. LEXIS 70493 (D. Md. May 16, 2013), the plaintiffs, seeking emotional distress damages after entry of default judgment, testified to similar injuries of headaches, sleeplessness and stress resulting from a fraudulent foreclosure scheme. *Id.* at *8-9. The court concluded that "although Plaintiffs' testimony was the sole source of evidence of their injuries, and no amount of money [could] truly compensate them for their trials, damages for emotional distress [were] appropriate" because "[e]ach person suffered stress for many months as they faced the loss of their homes." *Id.* at *11-12. The court awarded pain and suffering damages to each plaintiff in the amount of $25,000. *Id.* Because the facts of this case closely resemble the facts in *Fields*, the court will award each Plaintiff emotional distress damages in the amount of $25,000.

Plaintiffs also seek punitive damages stemming from Defendants' fraud. "Maryland law permits an award of punitive damages only if a plaintiff can prove 'actual malice' on the part of the defendant, 'based upon the heinous nature' of the defendant's fraudulent conduct." *Rhodomoyer v. Wells Fargo Bank, N.A.*, Civ. No. RDB 12-3806, 2013 U.S. Dist. LEXIS 66734, at *15-16 (D. Md. May 10, 2013) (quoting *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420 (1992)). Clear and convincing evidence of actual malice is required. 325 Md. at 466. Here, there is clear and convincing evidence that the Lacys acted with actual malice by knowingly making misrepresentations about the purpose of the Clean Slate program with the intent to deceive Plaintiffs. Accordingly, punitive damages are available to Plaintiffs.

"To determine the amount of punitive damages, Maryland courts consider a defendant's 'degree of culpability' and 'ability to pay.'" *St. Annes Dev. Co., LLC v. Trabich*, 737 F. Supp. 2d 517, 532 (D. Md. 2010) (quoting *Embrey v. Holly*, 293 Md. 128, 141-42 (1982)). "The purpose of punitive damages is not to compensate the plaintiff but to punish and deter the wrongdoer." *Id.* (citing *Exxon Corp. v. Yarema*, 69 Md. App. 124 (1986)). "Accordingly, punitive damage awards must not be disproportionate to the gravity of the defendant's wrong." *Id.* (citation and quotation marks omitted).

The Lacys are highly culpable. They led the Louers to believe that they would assist them in avoiding foreclosure while having no intention of doing so. They sold the Louers' home to a third party with no intention of returning the property to the Louers as promised. Meanwhile, the Lacys extracted significant equity from the residence while fully aware that the Louers were in a vulnerable situation because they were in danger of losing their home. Moreover, the Louers presented evidence of other similar foreclosure scams involving the Lacys; thus, this was not an isolated transaction but rather a pattern of misconduct.

On the other hand, Shanita Lacy has already received a large degree of punishment. She pleaded guilty to one count of wire fraud in the Eastern District of Virginia and was sentenced to four years in prison. *United States v. Lacy*, Crim. No. 10-170 HCM-DEM, Dkt. No. 22. She was also ordered to pay restitution in the amount of $883,002.47. *Id.* at 5. This mitigates the need for further punishment and deterrence with regard to Shanita Lacy. Furthermore, there is no evidence before the court regarding the Lacys' ability to pay a punitive damages award. Nevertheless, considering the public policy interest in deterring fraud, the court will award punitive damages in the amount of $10,000 against each of the Lacys. *See St. Annes Dev. Co., LLC v. Trabich*, 737 F. Supp. 2d 517, 533 (D. Md. 2010) (awarding plaintiffs punitive damages

in the amount of $10,000 because defendants falsely represented in a loan agreement that they intended to use the money for commercial purposes); *Johnson v. Home Savers Consulting Corp.*, 04-CV-5427 (NG) (KAM), 2007 U.S. Dist. LEXIS 24288, at *26 (E.D.N.Y. Mar. 23, 2007) (awarding plaintiffs punitive damages in the amount of $7,500 to punish defendant's fraudulent conduct in a foreclosure rescue scheme).

With regard to Challenge Financial, Plaintiffs have not alleged that the mortgage broker falsely misrepresented anything to the Louers; they only allege that Challenge Financial misrepresented facts to Option One. *See Day v. DB Capital Group, LLC*, Civ. No. DKC 10-1658, 2011 U.S. Dist. LEXIS 25303, at *19 (D. Md. Mar. 11, 2011) ("Plaintiff has failed to plead adequate facts to establish a claim that the [Defendants] are independently liable for fraud. Although the complaint identifies alleged false statements made by the [Defendants], it does not allege that any of these statements were made to the Plaintiff or that he relied on these false statements. Instead the [Defendants'] alleged false statements were made in loan applications. With no facts to support these key elements of the fraud claim, the claim must be dismissed . . . ."). Accordingly, Plaintiff cannot recover damages from Challenge Financial on their fraud claim.

### C. Negligence.

The elements of negligence require a plaintiff to show: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Chi. Title Ins. Co. v. Allfirst Bank*, 394 Md. 270, 290 (2006) (quotations and citations omitted). In the amended complaint, Plaintiffs allege that Defendants owed them multiple duties, including: ensuring that their agents were not engaging in fraudulent

behavior; ensuring that information contained on the HUD-1 Settlement Statement and other closing documents was accurate; and ensuring that the lender's instructions regarding settlement procedures were followed. ECF No. 47 at 21. Indeed, the Lacys, acting as foreclosure consultants, owed the Louers the same duty of care that a licensed real estate broker owes to a client. RP § 7-309(b). These duties include a duty to "treat all parties to the transaction honestly and fairly and answer all questions truthfully," "exercise reasonable care and diligence," and "comply with all . . . other applicable laws and regulations." MD. CODE ANN., BUS. OCC. & PROF. § 17-532 (c)(1)(iv), (vi) and (vii)(3). The well-pleaded facts establish that the Lacys breached these duties of care and that Plaintiffs suffered harm as a result. The Lacys are thus liable under the negligence count. However, because Plaintiffs seek damages equal to the equity they lost in their home—damages which have already been accounted for under the PHIFA count—no additional damages will be awarded under the negligence count.

As for Challenge Financial, Plaintiffs have failed to cite a duty that Challenge Financial owed to them. Plaintiffs allege that Challenge Financial provided false information to Option One, but Plaintiffs fail to connect any conduct of Challenge Financial with harm suffered by Plaintiffs. Accordingly, Plaintiffs cannot recover damages from Challenge Financial under a theory of negligence.

### D. Breach of Contract.

Plaintiffs claim that the Lacys are liable for breach of contract.[4] A breach of contract is "a failure, *without legal excuse*, to perform any promise which forms the whole or part of a contract." *Manning v. Mercatanti*, 898 F. Supp. 2d 850, 867 (D. Md. 2012) (citation omitted) (emphasis in original). A contract exists where there is "mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *CTI/DC, Inc. v. Selective Ins. Co.*

---

[4] Plaintiffs do not advance a breach of contract claim against Challenge Financial.

*of Am.*, 392 F.3d 114, 123 (4th Cir. 2004). Here, Plaintiffs have sufficiently demonstrated the existence of a contract between the parties. Based on Plaintiffs' allegations, the Lacys offered services to the Plaintiffs, representing that they could stop and/or postpone the imminent foreclosure of their home and help repair the Plaintiffs' credit. Plaintiffs accepted this offer by agreeing to use their foreclosure consulting services. The agreement directed the Lacys to help Plaintiffs avoid foreclosure by restoring their credit. Additionally, the Louers expected to receive the proceeds of the sale of the property after payment of all legitimate liens and deduction of reasonable closing fees. ECF No. 47 at 23. With regard to consideration, Plaintiffs alleged that they paid $130,000 to Clean Slate as a program enrollment fee. ECF No. 47 at 23. As discussed previously, the Lacys did not perform the services they agreed to perform. Therefore, based on Plaintiffs' well-pleaded factual allegations, Plaintiffs are entitled to damages from the Lacys for breach of contract. Again, however, because these damages overlap with the actual damages awarded under the PHIFA claim, no additional damages will be awarded under this count.

### E. Unjust Enrichment.

"Unjust enrichment consists of three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007) (citations omitted). "[A]n unjust enrichment claim is based on a quasi-contract or an implied-in-law contract" and "is simply a rule of law that requires restitution to the plaintiff of something that came into defendant's hands but belongs to the plaintiff in some sense." *Bank of Am. Corp. v. Gibbons*, 173 Md. App. 261,

271 (2007) (citations and quotation marks omitted). "When an express contract is present, a plaintiff cannot recover under the quasi-contractual theory of unjust enrichment." *Haley*, 2010 U.S. Dist. LEXIS 112171, at *23 (citation omitted). Because Plaintiffs have established the existence of an express contract with the Lacys as well as a subsequent breach, Plaintiffs may not recover on their claim for unjust enrichment against the Lacys.

Challenge Financial is not liable under a theory of unjust enrichment. Plaintiffs have failed to identify a benefit conferred upon Challenge Financial by Plaintiffs. Even if Challenge Financial knew about false information on certain loan documents between Bennett and Option One, Plaintiffs have not alleged that Challenge Financial's fees derived, directly or indirectly, from them.

### F. Attorneys' fees.

Although Plaintiffs seek attorneys' fees, they have presented no evidence of any amounts expended. Thus, no award will be made. *See Joe Hand Promotions, Inc., v. Hanaro Bethesda, Inc.*, Civ. No. WGC 11-191, 2012 U.S. Dist. LEXIS 85215 at *21 (D. Md. June 20, 2012).

### IV. Conclusion.

The court will enter judgment in favor of the Louers against the Lacys, jointly and severally, for compensatory damages of $510,781.44 and emotional damages of $25,000 to both Dwight and Faith Louers individually. In addition, punitive damages of $10,000 will be awarded to Dwight and Faith Louers against Shanita Lacy individually and Clarence Lacy individually.

Date: December 3, 2013                           /S/_____
                                          JILLYN K. SCHULZE
                                          United States Magistrate Judge